**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ADIR INTERNATIONAL, LLC, DBA Curacao, FKA La Curacao, a Delaware Limited Liability Company; RON AZARKMAN, an individual,<br>    *Plaintiffs-Counter-Defendants-Appellants,*<br><br>v.<br><br>STARR INDEMNITY AND LIABILITY COMPANY, a Texas Corporation,<br>    *Defendant-Counter-Claimant-Appellee.* | No. 19-56320<br><br>D.C. No. 2:19-cv-04352-R-PLA<br><br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
Gary Klausner, District Judge, Presiding

Argued and Submitted December 11, 2020
Pasadena, California

Filed April 15, 2021

Before:  N. Randy Smith and Kenneth K. Lee, Circuit Judges, and Matthew F. Kennelly,[*] District Judge.

Opinion by Judge Lee

---

## SUMMARY[**]

### California Insurance Law

The panel affirmed the district court's summary judgment in favor of Starr Indemnity and Liability Company in a diversity insurance-coverage action.

California's Attorney General sued Adir International, LLC for violating state consumer protection laws.  After initially agreeing to provide coverage, Adir's insurer, Starr Indemnity, said it would no longer pay for Adir's defense pursuant to California Insurance Code § 533.5(b), which forbids insurer coverage in certain consumer protection cases brought by the state.

The panel held Cal. Ins. Code § 533.5(b) did not facially violate the due process right of insurance holders to fund and retain the counsel of their choice in the civil context.  The panel also rejected Adir's statutory argument that section 533.5 applied to actions involving only monetary relief.  The panel further held that under the plain text of the statute, it

---

[*] The Honorable Matthew F. Kennelly, sitting by designation from the Northern District of Illinois.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

applied to actions that seek injunctive relief along with monetary relief.

Because Starr Indemnity had no duty to defend nor to indemnify, the panel affirmed the district court's determination that Starr Indemnity was entitled to reimbursement of defense costs under the explicit language of the insurance policy.

## COUNSEL

Joseph S. Klapach (argued), Klapach & Klapach P.C., Sherman Oaks, California, for Plaintiffs-Counter-Defendants-Appellees.

Kevin F. Kieffer (argued) and Ryan C. Tuley, Troutman Sanders LLP, Irvine, California, for Defendant-Counter-Claimant-Appellee.

David L. Abney, Ahwatukee Legal Office P.C., Phoenix, Arizona, for Amicus Curiae United Policyholders.

Xavier Becerra, Attorney General; Nicklas A. Akers, Senior Assistant Attorney General; Michele Van Gelderen, Supervising Deputy Attorney General; Michael Reynolds and Rachel A. Foodman, Deputy Attorneys General; Office of the Attorney General, San Francisco, California; for Amicus Curiae State of California.

## OPINION

LEE, Circuit Judge:

This case raises the question of whether a party has a due process right to retain and fund counsel through insurance proceeds. California's Attorney General sued Adir International for violating state consumer protection laws. To defend itself, Adir asked its insurance carrier to pay its legal fees. The insurer agreed, but the Attorney General warned that California Insurance Code § 533.5(b) forbids it from providing coverage in certain consumer protection cases brought by the state. The insurer reversed itself and said it would no longer pay for Adir's legal defense. Adir challenged the law's constitutionality, arguing that the state unfairly stripped it of insurance defense coverage based on unproven allegations in the complaint.

We affirm the district court's dismissal of Adir's challenge. California Insurance Code § 533.5(b) — which nullifies an insurance company's duty to defend — does not facially violate a party's due process right to retain counsel. In civil cases, courts have recognized a denial of due process only if the government actively thwarts a party from obtaining a lawyer or prevents it from communicating with counsel. Adir has made no such allegation. While it cannot tap into its insurance coverage, Adir has managed to obtain and communicate with counsel. We also reject Adir's statutory argument that section 533.5 applies to actions involving only monetary relief. Under the plain text of the statute, it applies to actions that seek injunctive relief along with monetary relief.

## BACKGROUND

## I. Factual Background

Adir operates a retail chain called Curacao with stores in California, Nevada, and Arizona.  In 2017, the California Attorney General sued Adir and its Chief Executive Officer, Ron Azarkman,[1] for unfair and misleading business tactics that allegedly exploit Curacao's mainly low-income, Spanish-speaking customer base.  The complaint alleged violations of California's Unfair Competition Law (UCL) and False Advertising Law (FAL), and sought restitution, civil penalties, costs of suit, and other equitable relief.  Relevant for this appeal, the complaint sought injunctive relief permanently enjoining Adir from making any false or misleading statements in violation of the FAL and engaging in unfair competition in violation of the UCL.

Meanwhile, Adir had bought an insurance policy from Starr Indemnity.  The policy provided that Starr would defend and indemnify Adir and its executives for losses arising from certain claims alleging wrongful acts.  When the California Attorney General sued, Adir tendered the complaint to Starr and asked it to defend Adir against the lawsuit.  Starr acknowledged that it would defend the action under a reservation of rights, and then became actively involved in the defense of that action.

This all halted in March 2019 when Starr received a written warning from the California Attorney General's Office.  In the letter, the Attorney General's Office explained that Starr violated California Insurance Code § 533.5.  (Adir

---

[1] Technically, both Adir and Azarkman are appellants, but this Opinion will refer to both appellants as "Adir" for the sake of simplicity.

also apparently received a copy of the same letter.)  Section
533.5 provides:

> **(a)** No policy of insurance shall provide, or
> be construed to provide, any coverage or
> indemnity for the payment of any fine,
> penalty, or restitution in any criminal action
> or proceeding or in any action or proceeding
> brought pursuant to [the UCL or FAL] by the
> Attorney General . . . notwithstanding
> whether the exclusion or exception regarding
> this type of coverage or indemnity is
> expressly stated in the policy.

> **(b)** No policy of insurance shall provide, or
> be construed to provide, any duty to defend,
> as defined in subdivision (c), any claim in any
> criminal action or proceeding or in any action
> or proceeding brought pursuant to [the UCL
> or FAL] in which the recovery of a fine,
> penalty, or restitution is sought by the
> Attorney General . . . notwithstanding
> whether the exclusion or exception regarding
> the duty to defend this type of claim is
> expressly stated in the policy.

> **(c)** For the purpose of this section, "duty to
> defend" means the insurer's right or
> obligation to investigate, contest, defend,
> control the defense of, compromise, settle,
> negotiate the compromise or settlement of, or
> indemnify for the cost of any aspect of
> defending any claim in any criminal action or
> proceeding or in any action or proceeding
> brought pursuant to [the UCL or FAL] in

which the insured expects or contends that
(1) the insurer is liable or is potentially liable
to make any payment on behalf of the insured
or (2) the insurer will provide a defense for a
claim even though the insurer is precluded by
law from indemnifying that claim.

**(d)** Any provision in a policy of insurance
which is in violation of subdivision (a) or (b)
is contrary to public policy and void.

Cal. Ins. Code § 533.5.

A few weeks after receiving the letter from the Attorney
General's Office, Starr informed Adir that it would "stop
making any payments for defense costs" and reserved "its
rights to seek reimbursement of all amounts paid to date."

## II. Procedural Background

After several rounds of correspondence about whether
section 533.5 applied, Adir sued Starr in state court, and
Starr removed to federal court under 28 U.S.C. § 1332. In
August 2019, Starr filed a motion for summary judgment,
while Adir cross-moved for partial summary judgment.

In September 2019, the district court granted Starr's
motion for summary judgment and denied Adir's motion for
partial summary judgment. The district court did not address
Adir's constitutional challenge to the statute's defense
prohibition, and instead focused on the statutory
construction issue. Addressing first the duty to defend, the
district court explained that subsection (b) — the defense
provision — "clearly and explicitly establishes that there
was no potential for coverage and, consequently, no duty to
defend in the underlying action." Specifically, the district

8      ADIR INT'L V. STARR INDEMNITY & LIABILITY

court noted that subsection (b) "unambiguously precludes an insurer's duty to defend not only a UCL or FAL claim *for* the recovery of a fine, penalty, or restitution, but also *any claim* brought pursuant to the UCL or FAL in an action *in which* the Attorney General or another state prosecuting authority seeks such fine, penalty, or restitution."

As for the duty to indemnify under subsection (a), the district court held that because "there is no duty to defend, there can be no duty to indemnify."  The district court also noted that subsection (a) "explicitly precludes indemnification for any fine, penalty, or restitution in any action brought under the UCL or FAL by the Attorney General or another state prosecuting authority."  Finally, the district court held that Starr was entitled to reimbursement of defense costs because the insurance policy itself explicitly provided for a right to reimbursement.  Later that month, the district court amended the final judgment to specify that Adir owed Starr over $2 million in restitution.  This appeal followed.

**STANDARD OF REVIEW**

We review de novo the district court's grant of summary judgment.  *Baker v. Liberty Mut. Ins. Co.*, 143 F.3d 1260, 1263 (9th Cir. 1998).  The court "must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law."  *Id.*  Similarly, we review de novo a challenge to the constitutionality of a statute.  *Gray v. First Winthrop Corp.*, 989 F.2d 1564, 1567 (9th Cir. 1993).  The same applies to the district court's interpretation of a state statute.  *Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*, 222 F.3d 643, 646 (9th Cir. 2000).

## ANALYSIS

On appeal, Adir challenges both the indemnification and the defense provisions of California Insurance Code § 533.5. (As a reminder, subsection (a) is the indemnity provision, while subsection (b) is the defense provision).   Adir challenges subsection (b) on the basis that it violates an insurance holder's due process right to retain and fund the counsel of its choice.   Adir also asserts statutory challenges to both subsection (a) and subsection (b), arguing that the district court went beyond the bounds of the statute by interpreting both subsections to prohibit coverage of the *injunctive* relief (rather than monetary relief) portion of the underlying action.   To Adir's way of thinking, the provisions cover only "fines, penalties, and restitution" and thus do not apply to injunctive relief.    Finally, Adir challenges the district court's ruling on Starr's right to reimbursement.   We affirm the grant of summary judgment for Starr.

**I.  California Insurance Code § 533.5(b) does not facially violate the due process right of insurance holders to fund and retain the counsel of their choice in the civil context.**

Adir challenges the constitutionality of California Insurance Code § 533.5(b), which bars insurance companies from paying legal defense fees for certain consumer protection lawsuits brought by the state.   Adir argues that it violates the Due Process Clauses of the Fifth and Fourteenth Amendments because it interferes with an insured's ability to fund and retain the counsel of its choice.   As Adir points out, California has stacked the deck against defendants facing these lawsuits filed by the state: Although the Attorney General has yet to prove any of the allegations in his lawsuit, he has invoked the power of the state to deny insurance coverage that Adir paid for to defend itself.

10    ADIR INT'L V. STARR INDEMNITY & LIABILITY

In the civil context, courts have limited the reach of the
Due Process Clause to cases in which the government has
actively prevented hiring or communicating with counsel.
Adir has not alleged such impingements by the state. There
is also no allegation that Adir cannot afford competent
counsel absent coverage under the policy. We thus reject
Adir's facial constitutional challenge to California Insurance
Code § 533.5(b).[2]

## A. Courts have recognized a very limited due process right to retain and fund counsel in the civil context.

To start, this court has long held that there is "no
constitutional right to counsel in a civil case." *United States
v. 30.64 Acres of Land, More or Less, Situated in Klickitat
Cty., Washington*, 795 F.2d 796, 801 (9th Cir. 1986)
(cleaned up). Unlike in criminal cases that implicate the
Sixth Amendment right to counsel, civil litigants who cannot
afford counsel are not constitutionally guaranteed the
appointment of a lawyer.

Adir, though, correctly points out that courts have
generally acknowledged a civil litigant's Fifth Amendment
due process right to retain and fund the counsel of their
choice. *See Potashnick v. Port City Const. Co*., 609 F.2d
1101, 1117 (5th Cir. 1980) (explaining that "the right to
retain counsel in civil litigation is implicit in the concept of
fifth amendment due process"). "If in any case, civil or
criminal, a state or federal court were arbitrarily to refuse to

---

[2] The district court did not address Adir's constitutional arguments,
even though Adir raised it in its briefing. We can affirm the district
court's ruling on any ground in the record. *Atel Fin. Corp. v. Quaker
Coal Co*., 321 F.3d 924, 926 (9th Cir. 2003) (per curiam).

hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense." *Powell v. Alabama*, 287 U.S. 45, 68 (1932). Put another way, "there is no right of *subsidized* access" in civil cases like there is in the Sixth Amendment context, but if a civil litigant "*hires* a lawyer," then certain protections kick in. *Guajardo-Palma v. Martinson*, 622 F.3d 801, 803 (7th Cir. 2010) (cleaned up).

So, what are the contours of a civil litigant's due process right to retain counsel? For one, a court "may not refuse to accept filings" from a civil litigant's retained lawyer. *Id.* In addition, the right to retain counsel might be violated if a trial court prohibits a civil litigant from communicating with his or her retained counsel during breaks and recesses during a trial. *Potashnick*, 609 F.2d at 1119. A civil litigant also probably cannot be denied the opportunity to consult with retained counsel about settlement terms. *Mosley v. St. Louis Sw. Ry.*, 634 F.2d 942, 946 (5th Cir. 1981). And one sister circuit held that a trial court erred in refusing to give a civil litigant extra time to retain new counsel after the original counsel withdrew before trial. *Anderson v. Sheppard*, 856 F.2d 741, 748 (6th Cir. 1988).

Beyond that, though, courts have construed the due process right to retain counsel very narrowly. For example, our court has suggested that the right to retain counsel does not require the release of frozen assets so that a civil defendant can hire an attorney or otherwise defend his claim. *See CFTC v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995). "A district court may . . . forbid or limit payment of attorney fees out of frozen assets." *Id.* (recognizing, however, that a district court must still exercise "discretion").

12      ADIR INT'L V. STARR INDEMNITY & LIABILITY
───────────────────────────────────────────

Other circuits have similarly refused to adopt an
expansive reading of the due process right to retain counsel.
The Third Circuit, for instance, has held that the right
appears to go "no further than preventing arbitrary dismissal
of a chosen attorney." *Kentucky W. Virginia Gas Co. v.
Pennsylvania Pub. Util. Comm'n*, 837 F.2d 600, 618 (3d Cir.
1988) (cleaned up). Along those lines, the First Circuit has
suggested that as long as a trial court does not affirmatively
prevent a civil litigant from retaining counsel, no
constitutional violation occurs, even if the civil litigant still
cannot hire a lawyer. *Gray v. New England Tel. & Tel. Co.*,
792 F.2d 251, 257 (1st Cir. 1986) (no violation of due
process right where court postponed trial to give civil litigant
time to retain counsel, but litigant was unable to do so).

In sum, the due process right to retain counsel in civil
cases appears to apply only in extreme scenarios where the
government substantially interferes with a party's ability to
communicate with his or her lawyer or actively prevents a
party who is willing and able to obtain counsel from doing
so. This narrow scope of the due process right to retain
counsel — as opposed to the much more robust Sixth
Amendment right to counsel — finds support in the original
public meaning of the term "due process." As the Supreme
Court long ago explained, the Fifth Amendment Due Process
Clause is rooted in the Magna Carta. *Murray's Lessee v.
Hoboken Land & Improvement Co.*, 59 U.S. 272, 276
(1856). *See also* Edward J. Eberle, *Procedural Due Process:
The Original Understanding,* 4 Const. Comment. 339
(1987). At the time of the Fifth Amendment's ratification,
the framers construed "due process of law" to mean the same
thing as "the law of the land," which was traditionally
understood to impose a "restraint on the legislative as well

ADIR INT'L V. STARR INDEMNITY & LIABILITY     13

as on the executive and judicial powers of the government."[3]
*Murray's Lessee*, 59 U.S. at 276. *See also Daniels v.
Williams*, 474 U.S. 327, 331–32 (1986) (discussing the
"traditional and common-sense notion that the Due Process
Clause, like its forebear in the Magna Carta, was 'intended
to secure the individual from the arbitrary exercise of the
powers of government.'" (cleaned up)).

Meanwhile, the Supreme Court has characterized "the
law of the land" as "a law which hears before it condemns."
*Powell*, 287 U.S. at 68 (cleaned up).  That makes sense
because "[t]he fundamental requisite of due process of law
is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S.
385, 394 (1914).  This is where the right to counsel comes
into play.  "Historically and in practice, [a hearing] has
always included the right to the aid of counsel *when desired
and provided by the party asserting the right*." *Powell*,
287 U.S. at 68 (emphasis added).[4]   Thus, due process
historically did not establish a broad or unfettered right to
counsel in civil cases, but rather provided limited protection

---

[3] The Magna Carta provides that: "No freeman shall be taken, or
imprisoned, or be disseized of his freehold, or liberties, or free customs,
or be outlawed, or exiled, or any otherwise destroyed; nor will we not
pass upon him, nor condemn him, but by lawful judgment of his peers or
by the law of the land."  *See* 1 Edward Coke, *The Second Part of the
Institutes of the Laws of England* 45 (1797).

[4] Indeed, as the *Potashnick* court noted, the English system had long
"recognized the right to retain civil counsel," and it was only because the
English practice was to *deny* representation to felony defendants that the
framers "specifically provided for a right to retain counsel in criminal
prosecutions" by way of the Sixth Amendment.  *Potashnick*, 609 F.2d
at 1117 (cleaned up).  *See also Powell*, 287 U.S. at 60 ("Originally, in
England, a person charged with treason or felony was denied the aid of
counsel . . . .  At the same time parties in civil cases and persons accused
of misdemeanors were entitled to the full assistance of counsel.").

14    ADIR INT'L V. STARR INDEMNITY & LIABILITY

against the government preventing a party from being heard in court. And as a practical matter, that means due process bars the government from actively preventing a party from obtaining counsel or communicating with his or her lawyer in civil cases.

**B. The limited right to retain counsel does not include the indirect right to fund and retain counsel through an insurance policy.**

With this framework in mind, the question then becomes: Is there any way to fit Adir's proposed right — which really boils down to an indirect right to fund and retain the counsel through an insurance contract — into the existing due process right? We see no reason to enlarge the limited due process right to retain counsel to include a constitutional right to use insurance proceeds to pay for legal fees. While Adir complains that California Insurance Code § 533.5(b) is unfair, the statute does not actively prevent Adir from obtaining counsel or communicating with its lawyers.

Adir relies heavily on *United States v. Stein*, 541 F.3d 130 (2d Cir. 2008) and *Luis v. United States*, 136 S. Ct. 1083 (2016). In *Stein*, the Second Circuit held that prosecutors violated the criminal defendants' Sixth Amendment right to counsel — which encompasses a "right to use *wholly legitimate funds* to hire the attorney of his choice" — when they pressured the defendants' lawyers to stop paying their legal fees. *Stein*, 541 F.3d at 155 (cleaned up). Similarly, in *Luis*, the Supreme Court articulated that "the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." *Luis*, 136 S. Ct. at 1088.

But *Stein* and *Luis* were both criminal cases interpreting the Sixth Amendment right to counsel.  Adir, for its part, argues that the Sixth Amendment at least offers "guidance" for the scope of a civil litigant's due process right to counsel.  But "guidance" does not mean that the two rights are equivalent.  The Sixth Amendment's explicit guarantee of counsel in criminal cases is broader than the judicially constructed right under the Due Process Clause. And for good reason: While a civil lawsuit may implicate large sums of money or restrictions on business practices, a criminal case may lead to the loss of liberty or life.  *See Potashnick*, 609 F.2d at 1118 (stating that "an analogy can be drawn between the criminal and civil litigants' respective rights to counsel" but also emphasizing that "[a] criminal defendant faced with a potential loss of his personal liberty has much more at stake than a civil litigant asserting or contesting a claim for damages, and for this reason the law affords greater protection to the criminal defendant's rights").

At the end of the day, California's law only makes it harder, though not necessarily impossible, for a civil litigant to retain the counsel of their choice.  Adir has not alleged that the government actively thwarted it from obtaining counsel, or that the law precluded it from communicating with counsel.  Indeed, Adir appears to have obtained an able and competent counsel — without the use of insurance proceeds — for this appeal.[5]  We thus rule that California

---

[5] Adir stated at oral argument that it was bringing both a facial challenge and an as-applied challenge.  But the briefing appears to set forth a facial challenge only because Adir has not alleged how the law has impaired its ability to retain counsel.  We thus need not address whether Adir can raise an as-applied challenge.

Insurance Code § 533.5(b) does not impinge on a due process right to retain counsel.

## II. California Insurance Code § 533.5(b) prohibits a duty to defend in an underlying action even if the attorney general seeks injunctive relief.

We next address Adir's statutory challenge to California Insurance Code § 533.5(b).  Adir argues that the statutory language bars defense coverage for actions seeking *damages* only and does not extend to claims seeking injunctive relief. It maintains that district court adopted a too-broad interpretation in ruling that the statute prohibits Starr from defending the injunctive relief portion of the underlying action.  We reject Adir's strained reading of subsection (b).

### A. The text of subsection (b) forecloses a duty to defend for actions in which monetary relief is sought, even if injunctive relief is also sought.

We start, as we must, with the statutory text.  *Mt. Hawley Ins. Co. v. Lopez*, 156 Cal. Rptr. 3d 771, 779 (Ct. App. 2013). Section 533.5(b) states that there can be no "duty to defend . . . any claim . . . in any action or proceeding brought pursuant to [the UCL or FAL] in which the recovery of a fine, penalty, or restitution is sought by the Attorney General . . . ."  Cal. Ins. Code § 533.5(b).  To begin, the parties appear to agree that the phrase "duty to defend" attaches to "any claim."  The key question posed here is whether "any claim" encompasses (1) claims that *only* seek monetary relief or (2) all claims that seek monetary relief, even if it also demands injunctive relief.

Adir argues the former, contending that "any claim" only encompasses claims for monetary relief alone.  To arrive at that conclusion, Adir necessarily makes two unwarranted

assumptions about the text of the statute.  First, Adir assumes that the phrase "in which the recovery of a fine, penalty, or restitution is sought" must be read to mean "in which *only* the recovery of a fine, penalty, or restitution is sought." Second, Adir assumes that "any claim" can be bifurcated into a claim for monetary relief and a claim for injunctive relief.  We disagree with both assumptions.

> **1. The phrase "any claim . . . in which the recovery of a fine, penalty, or restitution is sought" is not limited to claims in which *only* monetary relief is sought.**

To start, there are plenty of textual clues that the phrase "any claim . . . in which the recovery of a fine, penalty, or restitution is sought" does not mean the same thing as the phrase "any claim . . . in which *only* the recovery of a fine, penalty, or restitution is sought."  Most obviously, the word "only" is absent from this section of the statute.  Adir's interpretation would require the court to impermissibly read that extra word into the statute.  *See Lamie v. U.S. Trustee*, 540 U.S. 526, 538 (2004) (declining to "read an absent word into the statute").  Along those same lines, the phrase "in which" merely communicates that the claim seeks monetary relief, but beyond that, "in which" does not at all imply that *only* monetary relief is sought.  As Starr points out, Adir's interpretation essentially replaces "in which the recovery of a fine, penalty, or restitution is sought" with the more restrictive modifier "*for* the recovery of a fine, penalty, or restitution."  That reading goes against the plain text of the statute.[6]

---

[6] Additionally, the phrase "in which the recovery of a fine, penalty, or restitution is sought," also modifies "any criminal action or

> **2. A "claim" cannot be bifurcated into a "claim" for monetary relief and a "claim" for injunctive relief for insurance defense purposes.**

Adir reads "claim" to mean "relief" or "remedy" to contrive a UCL or FAL "claim" for monetary relief as distinct from a UCL or FAL "claim" for injunctive relief. But Adir does not offer any authority for that reading of the word "claim." Nor does Adir's reading make sense given the statute's inclusion of the phrase "in any action or proceeding," which seems to refer to the entire lawsuit as a whole. If "action or proceeding" refers to the entire lawsuit, then it would follow that the word "claim" refers to the individual causes of action *within* the lawsuit, which, in this case, would be the UCL claim and the FAL claim. With that framework in mind, the statute's reference to "duty to defend . . . any claim" seems to most naturally refer to coverage (or not) for particular causes of action within a larger "action or proceeding."

Further supporting this conclusion is the definition of "duty to defend," which precludes an insurer from "indemnify[ing] for the cost of *any aspect* of defending *any claim* . . . in *any action or proceeding* brought pursuant the [UCL or FAL]." Cal. Ins. Code § 533.5(b), (c) (emphases added). Subsection (c) makes it clear that an insurer is

---

proceeding." *Mt. Hawley*, 156 Cal. Rptr. 3d at 794. Thus, an interpretation limiting a claim to monetary relief would create an absurd result. *Jarman v. HCR ManorCare, Inc.*, 471 P.3d 1001, 1004 (Cal. 2020) ("If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.").

precluded from defending any action brought under the UCL
or FAL regardless of the relief sought.

But even so, Adir argues for bifurcating the UCL or FAL
claim into monetary and injunctive relief components.  Adir
cites *Broughton v. Cigna Healthplans of California*,
988 P.2d 67 (Cal. 1999) for the proposition that the
injunctive relief "claim" can be severed from the broader
UCL or FAL claim.  But *Broughton*'s holding is much more
limited than Adir makes it out to be.  In that case, the
California Supreme Court explained that it was "concerned
not with distinct arbitrable and inarbitrable claims, but with
arbitrable and inarbitrable *remedies* derived from the *same*
statutory *claim*."  *Broughton*, 21 Cal. 4th at 1088 (emphases
added).  The court then concluded that the damages action
should be sent to arbitration, while the injunctive relief
action could proceed in a judicial forum, citing "the strong
policy in both federal and state law for arbitrating private
disputes, and given the inherent unsuitability of arbitration
as a means of resolving plaintiffs' action for injunctive relief
under the CLRA."  *Id.*

There is nothing in *Broughton*'s reasoning to suggest that
UCL and FAL claims should likewise be bifurcated by
remedy for insurability purposes.  Unlike in the arbitration
context, the "strong policy" in this case arguably cuts the
other way — that is, against insurability for UCL and FAL
claims.  And even if the UCL or FAL claim could somehow
be severed into the injunctive relief and the monetary relief
components to determine insurability, the text does not
support doing so here; the statute refers only to "any claim,"
rather than "the portion of any claim."

Further, the statutory framework does not support a
bifurcation of injunctive relief and civil penalties.
Government officials may "seek redress through the

20      Adir Int'l v. Starr Indemnity & Liability

bringing of civil law enforcement cases seeking equitable
relief and civil penalties" for violations of the UCL and FAL.
*Mt. Hawley*, 156 Cal. Rptr. 3d at 794; *see also* Cal. Bus. &
Professions Code § 17206.  Equitable remedies (injunctive
relief, restitution, and civil penalties) are the only remedies
available under California Business and Professions Code
§§ 17200–17210.  *See Nationwide Biweekly Admin., Inc. v.
Superior Ct. of Alameda Cty.*, 462 P.3d 461, 469 (Cal. 2020);
*see also In re Tobacco II Cases*, 207 P.3d 20, 29 (Cal. 2009)
("To achieve its goal of deterring unfair business practices
in an expeditious manner, the Legislature limited the scope
of the remedies available under the UCL" to "equitable"
damages such as "injunctive relief and restitution.").  "The
primary form of relief available under the UCL to protect
consumers from unfair business practices is an injunction."
*McGill v. Citibank, N.A.*, 9 393 P.3d 85, 89 (Cal. 2017)
(cleaned up).

In light of the statutory framework as a whole, it would
be illogical to conclude that the legislature intended to carve
out an exception to allow for the defense for the primary
form of equitable relief (injunctions) but not the others (fine,
restitution, or civil penalty).  *See Los Angeles Cty. Metro.
Transportation Auth. v. Alameda Produce Mkt., LLC*,
264 P.3d 579, 583 (Cal. 2011) ("We must harmonize the
statute's various parts by considering it in the context of the
statutory framework as a whole.").

**B. Our interpretation of subsection (b) does not
render the duty to defend narrower than the duty
to indemnify.**

Alternatively, Adir urges the court to interpret
subsection (b) with an eye toward subsection (a), which
prohibits "coverage or indemnity for the payment of any
fine, penalty, or restitution . . . in any action or proceeding

brought pursuant to [the UCL or FAL]." Cal. Ins. Code
§ 533.5(a). The relationship between the two provisions
matters, Adir reminds us, because it is "well settled" under
California law that "the duty to defend is broader than the
duty to indemnify." *Certain Underwriters at Lloyd's of
London v. Superior Court*, 16 P.3d 94, 103 (Cal. 2001). Adir
asserts that because subsection (a) does not bar indemnity
for the payment of injunctive relief costs, then it would make
no sense to read subsection (b) to prohibit defense coverage
in the same context. That would improperly render the duty
to indemnify broader than the duty to defend.

We disagree. The insurance policy does not cover the
costs of injunctive relief in the first place. Nor do there
appear to be any real costs[7] associated with the injunctive
relief sought here.

The text of the policy defines "claim" to encompass a
"written demand for monetary, non-monetary, or injunctive
relief." But "claim" is not the same thing as "coverage." We
know this because the policy also states that the insurer shall
pay "the Loss arising from a Claim . . . ." The word "Loss"
is in turn defined to include "damages" but to exclude "any
amounts paid or incurred in complying with a judgment or
settlement for non-monetary or injunctive relief, but solely
as respects the Company." This indicates no coverage for
the costs of injunctive relief under the policy. To be fair, this
could still leave open the possibility of coverage for any
costs that Azarkman incurs in his individual capacity in
complying with the injunctive relief in this case. But it is not
clear what costs those would be, given the injunctive relief
being requested by the Attorney General.

---

[7] Any defense costs would be precluded under section 533.5(c).

22    ADIR INT'L V. STARR INDEMNITY & LIABILITY

Even if the insurance policy did cover the costs of
complying with injunctive relief, the injunctive relief sought
does not appear to impose any monetary costs.   The
California Attorney General appears to seek only (1) an
order permanently enjoining Adir and its agents "from
making any false or misleading statements in violation of"
the FAL, and (2) an order enjoining Adir and its agents from
engaging in unfair competition in violation of the UCL.  Adir
does not articulate how it will incur monetary costs to
comply with an order to make truthful representations.

Thus, it is unnecessary to resolve on appeal whether
subsection (a) prohibits Starr from indemnifying the costs of
injunctive relief in the underlying action here.  The insurance
policy itself makes clear that the answer is no.  We are also
not persuaded that there even are any actual monetary costs
attached to the injunctive relief sought in this case.  So we
leave the interpretation of subsection (a) for another day.

In any event, given (1) the premise in California law that
the duty to defend is always broader than the duty to
indemnify and (2) because there is no duty to defend any
criminal or civil proceeding under the UCL or FAL
(including this action), there would be no reason to suggest
a duty to indemnify in this action under subsection (a) of the
statute.

Lastly, because indemnity for restitution and indemnity
for an injunction are both equitable relief, there is no reason
for this court to construe the statute differently for one type
of equitable relief.  As the California Court of Appeal held,

> When the law requires a wrongdoer to
> disgorge money or property acquired through
> a violation of the law, to permit the
> wrongdoer to transfer the cost of

> disgorgement to an insurer would eliminate
> the incentive for obeying the law.  Otherwise,
> the wrongdoer would retain the proceeds of
> his illegal acts, merely shifting his loss to an
> insurer.

*Bank of the W. v. Superior Ct.*, 833 P.2d 545 (Cal. 1992).

* * * *

To sum up, the plain meaning of the statutory text of California Insurance Code § 533.5(b) forecloses defense coverage for any claim in an UCL or FAL action in which the state seeks monetary relief.  Here, the state seeks (among other things) monetary relief against Adir under the UCL and FAL.  The statute thus bars defense coverage for Adir.

### III.   The text of the insurance policy explicitly provides for a right to reimbursement of defense costs.

Finally, Adir challenges the district court's ruling that Starr has a right to the reimbursement of the defense costs advanced in the underlying action.  Unfortunately for Adir, the insurance contract appears to contain an express reservation of rights: "In the event and to the extent that the Insureds shall not be entitled to payment of such Loss under the terms and conditions of this policy, such payments by the Insurer shall be repaid to the Insurer by the Insureds . . . ." And the word "Loss" in turn includes defense costs. Because it turns out that there is no duty to defend nor to indemnify, we affirm the district court's determination that Starr is entitled to reimbursement under the explicit language of the insurance policy.

Adir makes several arguments in response, but none of
them can overcome this express contractual language.  For
instance, Adir relies on *Buss*, but that case only says that an
*implied* right of reimbursement must be explicitly reserved.
*Buss*, 939 P.2d at 776 n.13.  *Buss* does not apply when there
is already an express in-policy right to reimbursement; the
express language controls.   Adir also argues that Starr,
"acting under a reservation of rights," is entitled to
reimbursement only if it "prophylactically financed the
defense of claims as to which it owed no duty of defense."
But all that requires is that an insurer continue to finance a
defense while acting under a reservation of rights.  *See*
*Scottsdale Ins. Co. v. MV Transp.*, 115 P.3d 460, 470 (Cal.
2005) ("The insurer should be free, in an abundance of
caution, to afford the insured a defense under a reservation
of rights, with the understanding that reimbursement is
available if it is later established, as a matter of law, that no
duty to defend ever arose.").  There does not seem to be any
requirement, as Adir suggests, that the insurer do anything
extra on top of acting under a reservation of rights.  Indeed,
the whole idea seems to be to incentivize insurers to be
generous with the duty to defend.  *Id.*

Lastly, Adir's estoppel argument also fails.  The standard
here is whether Adir reasonably relied on Starr's conduct to
Adir's detriment.  *Chase v. Blue Cross of California*, 50 Cal.
Rptr. 2d 178, 188 (Ct. App. 1996).  But "failure to retain
separate counsel does not by itself show any detriment."
*State Farm Fire & Cas. Co. v. Jioras*, 29 Cal. Rptr. 2d 840,
845 (Ct. App. 1994).  More importantly, Adir does not
explain how its reliance could have been reasonable given
the insurance policy's express reservation of rights, not to
mention the fact that Starr signaled its doubts about coverage
from the very beginning, when it at first denied coverage in
November 2017, before agreeing to provide coverage under

a reservation of rights.  Thus, we affirm the district court's ruling that Starr is entitled to a reimbursement of defense costs.

## CONCLUSION

The district court's order granting summary judgment for Starr is **AFFIRMED**.